# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| JAMIE CALMESE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case no. 4:09cv1100 TCM |
| | ) |
| TERRY RUSSELL and CHRIS KOSTER, | ) |
| Attorney General of the State of Missouri, | ) |
| | ) |
| Respondents.[1] | ) |

## MEMORANDUM AND ORDER

Jamie Calmese (Petitioner), a Missouri prisoner, petitions the United States District Court for the Eastern District of Missouri for federal habeas corpus relief from an August 23, 2005 conviction following a jury trial. See 28 U.S.C. § 2254. Respondents filed a response [Doc. 12].

This matter is before the undersigned United States Magistrate Judge for review and final disposition of the petition.[2] Finding that the pending federal habeas petition presents

---

[1] The record reveals that Petitioner is incarcerated at the Eastern Reception, Diagnostic and Correctional Center (ERDCC), where Terry Russell is now the Warden. Therefore, the Court will substitute Russell for the originally named Respondent, Steve Larkins, who was the warden at the ERDCC at the time Petitioner filed this federal habeas action. See Rule 2 (a), Rules Governing Section 2254 Cases in the United States District Courts.

Additionally, the Court will add as a Respondent the Missouri Attorney General, Chris Koster, because Petitioner is challenging a judgment subjecting him to a sentence he will serve in the future in that consecutive terms of imprisonment were imposed in the underlying criminal proceeding challenged by this federal habeas action. See Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts; Sentence and J., Legal File, Resp't Ex. D, at 68-70.

[2] This matter is before the undersigned United States Magistrate Judge on consent of the parties. 28 U.S.C. § 636(c).

twelve grounds for relief, finding that all but two of the claims are procedurally barred, and concluding that the two other claims lack merit, this Court will deny the petition without further proceedings.[3]

## **Background**

In 2004 Petitioner was charged, as a prior and persistent offender, with first degree murder, in violation of Mo. Rev. Stat. § 565.020, and armed criminal action, in violation of Mo. Rev. Stat. § 571.015, for the shooting death on May 1, 2004, of Darryl Robinson. (Compl., filed May 2, 2004, Legal File, Resp't Ex. D, at 6-8; Indictment, filed June 22, 2004, Legal File, Resp't Ex. D, at 11-12.)

A jury found Petitioner guilty of the charges; and the trial court sentenced Petitioner to consecutive terms of imprisonment of life without the possibility of probation or parole for the first degree murder offense and life for the armed criminal action offense. (Verdicts, Legal

---

[3] Earlier the Court denied without prejudice Petitioner's motion to stay his federal habeas proceedings until his motion to reopen his state post-conviction proceedings was ruled in cause no. 0622-CC07255 in the Circuit Court for the City of St. Louis, State of Missouri (motion to reopen). (See Mem. and Order, dated Sept. 30, 2009 [Doc. 14].) In its order, this Court directed Petitioner "to promptly advise the Court of the motion court's ruling on his motion to reopen his post-conviction proceedings. If the motion court does reopen the proceedings, Petitioner may reassert his request for stay." (Id. at 2.) Petitioner did not advise this Court of any disposition of his motion to reopen; and has not reasserted a request for a stay of these federal habeas proceedings. A review of the docket sheet for cause no. 0622-CC07255 reveals that a motion by Petitioner was dismissed on February 3, 2010 "for lack of jurisdiction" and a subsequently filed motion to reopen was denied on September 1, 2011, upon a finding of the motion court that Petitioner had "not alleged facts which constitute abandonment" and Petitioner was "not entitled to any relief." (See Feb. 3, 2010 and Sept. 1, 2011 entries on docket sheet for Calmese v. State, No. 0622-CC07255 (Cir. Ct. St. Louis City filed Dec. 18, 2006) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Aug. 27, 2012).)

File, Resp't Ex. D, at 61, 62; Sentence and J., filed Oct. 28, 2005, Legal File, Resp't Ex. D, at 68-70.)

Petitioner raised three points in his timely direct appeal. (Notice of Appeal, Legal File, Resp't Ex. D, at 72-73.) In his first point, Petitioner argued that his Fifth, Sixth, and Fourteenth Amendment rights to due process, to a fair trial, and to be tried only for charged offenses were violated when the trial court allowed the prosecutor to elicit evidence of uncharged crimes through the testimony of Officer Simon who stated Detective Dampier had said, "We know who it is" and "reminded me that we had dealt with this guy before." (Pet'r Br., Resp't Ex. A, at 15, 18.) In his second point, Petitioner contended that his Fifth, Sixth, and Fourteenth Amendments to due process and a fair trial were violated when the trial court allowed the prosecutor to play the 911 tape for the jury because the tape bolstered the testimony of eyewitness Jimmie Jones, who was not impeached by any statement on that recording. (Id. at 16, 27.) For his third and final point, Petitioner urged that his rights to the Fifth, Sixth, and Fourteenth Amendments were violated when, over Petitioner's objection, the prosecutor elicited information from Petitioner, and then argued in closing "about [Petitioner's] release on probation regarding his prior convictions." (Id. at 17, 31.)

The Missouri Court of Appeals for the Eastern District of Missouri affirmed the trial court's sentence and judgment in a summary order, supplemented by a memorandum, sent only to the parties, setting forth the reasons for the decision. (Per curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Sept. 19, 2006, Resp't Ex.

G.)  In affirming, the state appellate court found the facts, viewed in the light most favorable

to the verdict, as follows:

> In April 2004, Darryl Robinson (Victim) lived with Yakela[4] Wicks
> (Yakela),[5] Yakela's father, Melvin Wicks (Melvin), and Yakela's four-year-old
> daughter, Alancia.  [Petitioner] was dating Yakela's sister, Lawanda, and had
> a child with Lawanda, one-year-old Jamecia.  [Petitioner] lived with Lawanda,
> Jamecia, and Lawanda's two other children.  [Petitioner], Lawanda and Victim
> worked at the same place and carpooled to work.  Yakela and Melvin usually
> babysat all the children when [Petitioner], Lawanda and Victim were working.

> On April 31, 2004,[6] [Petitioner] and Lawanda arrived at Yakela's home
> with Jamecia and Lawanda's other children, ready to carpool to work with
> Victim.  Alancia wanted to play with Jamecia, which angered [Petitioner] who
> told Alancia to leave J[a]mecia alone.  Victim asked [Petitioner] why he did not
> want Alancia to play with J[a]mecia, and [Petitioner] merely responded, "You
> don't have a mother-f--king thing to do with this."  Victim stated that he loved
> Alancia just as much as [Petitioner] loved Jamecia.  The men argued until
> Melvin intervened and separated them.  [Petitioner] and Lawanda then left with
> Jamecia and Lawanda's other children.  As they left, [Petitioner] said to Victim,
> "Whatever the f--k I do, I'm going to kill you."

> Yakela gave Victim a ride to work that day, as [Petitioner] and Lawanda
> had left without him.  Yakela saw [Petitioner] and Lawanda in the parking lot
> of the workplace, and asked them to bring the children back to her, so that
> Lawanda could go on in to work.  [Petitioner] was still upset and told Yakela,
> "I'm not going to let this ride."

> Later that evening, [Petitioner] telephoned Melvin several times and
> repeatedly asked him where Victim went after work.  Melvin told [Petitioner]
> that Victim usually did not go anywhere after work.

---

[4]  In the trial transcript and other available materials, this person's name is spelled "Ykela."
While this Court will refer to her as "Ykela," the Court will spell her name as the Missouri Court of
Appeals did in this excerpt from that court's opinion in the direct appeal.

[5]  The Court will refer to those individuals having the same last names by their first names.
This reference is for convenience and clarity, and is not meant to be disrespectful.

[6]  This date should probably be April 30, 2004.

The next day, Saturday, Yakela, Melvin, and Victim were planning to go to a laundromat because their dryer was not working. Lawanda called Yakela in the morning and asked her what they were all doing that day. Yakela told Lawanda that they had to go to a laundromat because the dryer was not working. As Yakela cooked Melvin and Victim some sausage, the men loaded laundry into the car. Melvin returned to the house after they finished loading the laundry, and Victim started to fix the car's radio.

Suddenly, [Petitioner] carrying a gun, walked up to the car, swung the driver's door open, and said to Victim, who was sitting in the car, "What's up now, n---er?" [Petitioner] pulled the trigger three times, but the weapon fired only once, striking Victim in the head. [Petitioner] ran away.

Jimmie Jones (Jones) was in his truck at the time of the shooting and saw [Petitioner], whom Jones recognized as a friend who frequently visited Melvin's and Yakela's house, shoot Victim. Jones called 911. Melvin and Yakela ran outside as soon as they heard a gunshot and saw [Petitioner] running away, carrying an object in his hand.

Officers Larry Dampier (Dampier) and Tommy Simon (Simon) were dispatched to the scene. After they learned that [Petitioner] was the shooter, they went to Lawanda's residence to look for him. The officers obtained permission from Lawanda to search the residence, but [Petitioner] was not there. As the officers told Lawanda what had transpired, [Petitioner] arrived at the house and opened the screen door. Simon saw him and said, "There he is," and [Petitioner] ran. Simon, yelling, "Stop! Police!" pursued [Petitioner] into a gangway, where [Petitioner] stumbled over a gate. Simon reached [Petitioner] and pointed his gun at him. [Petitioner] raised his hands and tossed a set of car keys into the grass. The officers found [Petitioner]'s car parked about fifteen feet from Lawanda's house.

Jones identified [Petitioner] shortly after his arrest. Jones stated that [Petitioner] was wearing different clothes on his upper body than what he had worn earlier that morning. The police seized three ATM . . . receipts from [Petitioner], which showed that [Petitioner] had withdrawn money from a gas station ATM . . . at 10:53 a.m., 10:55 a.m., and 10:56 a.m. Detective Jody Ballman testified that it took between five and seven minutes to drive between Lawanda's house and that particular gas station.

Victim died. The ballistic examination of the bullet recovered from his head showed that it was a .32 caliber bullet designed for a semiautomatic gun,

but had skidding marks consistent with being fired from a revolver, not a semiautomatic gun. Officer David Menendez, a firearms examiner, explained that firing a semiautomatic gun bullet from a revolver would not produce a reliable result and the revolver might not work.

While [Petitioner] was incarcerated, Melvin went to the police station for an interview. [Petitioner] saw Melvin and yelled from his cell, "Melvin, don't do that. I'm telling you don't do that."

[Petitioner] testified at trial, denying the shooting. [Petitioner] testified that he left Lawanda's house while she was on the telephone with Yakela to withdraw money from an ATM for the rent, and he walked to the gas station to use the ATM as his car would not start. [Petitioner] claimed that he had forgotten his glasses, so he had to wait for an employee at the gas station to help him withdraw the money from the ATM. [Petitioner] maintains that he then walked back to Lawanda's residence, but took off running after he got there because he saw a gun pointed at him and thought that there were drug dealers waiting for him. [Petitioner] claims that when he realized it was the police chasing him, he stopped, but the officers grabbed him and slammed him into the ground.

Lawanda testified that [Petitioner] left around 10:00 a.m. on the day of the murder to withdraw money for the rent, that he did not hear her conversation with Yakela, and that he never threatened to kill Victim.

At the close of all the evidence, the jury found [Petitioner] guilty of first-degree murder and armed criminal action. The trial court sentenced [Petitioner], as a prior and persistent offender, to life without parole for the murder and to a [consecutive][7] life sentence for the armed criminal action. This appeal follows.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Sept. 19, 2006, Resp't Ex. G, at 2-5 (four footnotes added).) In resolving Petitioner's first point on appeal, the Missouri Court of Appeals stated:

---

[7] See Sentence and J. filed Oct. 28, 2005, Legal File, Resp't Ex. D, at 68-70.

In his first point, [Petitioner] asserts that the trial court erred and abused its discretion in overruling his objection at trial to Simon's testimony that Officer Larry Dampier (Dampier) stated "We know who it is," and that Dampier "reminded me that we had dealt with this guy before." [Petitioner] maintains that this testimony indicated that he had committed prior bad acts and had dealings with the police, which was not legally relevant; was more prejudicial than probative of the charged crimes; and was improper propensity evidence.

<u>Preservation of Error and Standard of Review</u>

Simon's testimony about which [Petitioner] complains occurred during the following questioning by the State:

Q.  And after the initial interview with these witnesses, the name of the suspect was what?

A.  [names [Petitioner]]

Q.  And you at the time were requested to leave the scene, is that correct?

A.  Yes, I was.

Q.  And who requested you to leave the scene?

A.  It was me–

Q.  What officer?

A.  P. O. Officer Larry Dampier.  We were in separate cars.  He stated, *"We know who it is,"* and *he reminded me that we had dealt with this guy before*.

Q.  Did you ride separately with Officer Dampier?

A.  At that point, I was riding in a separate vehicle.  He went over in the same car, but arrived separately initially.

Q.  So, you responded in separate cars to the scene, but then jumped into one car?

- 7 -

A.  Yes, we did.

[DEFENSE COUNSEL]: Your Honor, may we approach?

[COURT]: Yes.

(At thi[s] time the following discussion was held out of the presence of the jury:)

[DEFENSE COUNSEL]: I don't know whether if it would have been possible to make a timely objection to the statement.  Certainly it's in front of the jury.  But what he said in response to–

[COURT]: I heard what he said.

[DEFENSE COUNSEL]: He said we dealt with him before.  That's a comment on potentially prior bad acts.

[PROSECUTOR]: It was non-responsive to my question.  I didn't expect him to say that.

[COURT]: It was non-responsive.

[PROSECUTOR]: Well, it was kind of an ambiguous statement.  I talked to him on the street.  I seen him at McDonald[']s.

[COURT]: What's before me?

[DEFENSE COUNSEL]: I'm going to ask for a mistrial.

[COURT]: Okay.  That's denied.  There was some testimony that has already come out, something about the police knew him because of some little domestic stuff at the house.  I don't see any prejudice at this point.

[Emphasis added.]  As can be seen in this transcript excerpt, [Petitioner]'s objection to the comment was untimely, as the objection was not made until after the question was asked and answered.  State v. Harris, 827 S.W.2d 255, 256 (Mo. [Ct.] App. . . . 1992).  Thus, the matter is not properly preserved for appellate review and we review only for plain error.  Id.

A defendant is entitled to plain error review if the defendant demonstrates that manifest injustice or a miscarriage of justice will occur unless the error is . . . corrected. State v. Knese, 985 S.W.2d 759, 770 (Mo. banc 1999). Plain error r[eview] is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review. Id.

## Discussion

[Petitioner]'s untimely objection was based on the premise that testimony indicated [Petitioner] had committed prior bad acts. However, [Petitioner] does not indicate what prior bad acts Simon's answer disclosed. Simon's answer did not identify [Petitioner] as the perpetrator of another crime or clearly associate him with other misconduct or criminal activity. To violate the rule prohibiting evidence of other crimes or misconduct by the accused, the evidence must show the accused committed, was accused of, was convicted of, or was definitely associated with the other crimes or misconduct. State v. Bolds, 11 S.W.3d 633, 638 (Mo. [Ct.] App. . . . 1999). Vague references or remarks cannot be characterized as clear evidence to associate the accused with other crimes. Id.; State v. Hornbuckle, 769 S.W.2d 89, 96 (Mo. banc 1989). We find that Simon's answer was just that: a vague reference or remark, which did not clearly associate [Petitioner] with any prior bad acts.

Furthermore, if any prejudice did result from the comment, it was minimal and certainly did not rise to the level of plain error required to reverse in the absence of a timely objection by [Petitioner] at trial. State v. Sullivan, 935 S.W.2d 747, 759 (Mo. [Ct.] App. . . . 1996).

For the foregoing reasons, Point I is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Sept. 19, 2006, Resp't Ex. G, at 5-8 (fourth, sixth through fourteenth, and sixteenth through nineteenth alterations in the original).)

In resolving Petitioner's second point on appeal, the Missouri Court of Appeals stated:

In his second point, [Petitioner] states that the trial court erred and abused its discretion in permitting the prosecutor to play the tape of Jones'[s]

phone call to 911 for the jury because the tape was hearsay; improperly bolstered Jones's prior consistent testimony; and was cumulative.

Standard of Review

The admission of evidence is reviewed for abuse of discretion. State v. Lyons, 951 S.W.2d 584, 593 (Mo. banc 1997).

Discussion

When the prosecutor requested to play for the jury the tape of Jones'[s] 911 call after he witnessed [Petitioner] murder Victim, defense counsel objected, claiming the tape improperly bolstered Jones'[s] testimony that he saw [Petitioner] approach Victim and his car, pull the trigger of his gun three times, although it only fired once, and run away. Defense counsel also claimed the tape of the 911 call contained hearsay statements. The trial court overruled defense counsel's objection.

Improper bolstering occurs when an out-of-court statement of a witness is offered solely to duplicate or corroborate trial testimony. State v. Wolfe, 13 S.W.3d 248, 257 (Mo. banc 2000) [abrogated on other grounds, Mitchell v. Kardesch, 313 S.W.3d 667 (Mo. 2010) (en banc)]. However, if the out-of-court statement is offered for relevant purposes other than corroboration and duplication - such as rehabilitation - there is no improper bolstering. Id. Defense counsel had extensively cross-examined Jones regarding his ability to completely observe the "incident," his ability to see [Petitioner]'s face, his familiarity with [Petitioner], his ability to correctly identify [Petitioner], and his ability to accurately describe the clothing and physical appearance of [Petitioner]. Consequently, the State was entitled to attempt to rehabilitate Jones on redirect examination. [Id.] Accordingly, for this reason, the introduction of the 911 tape was not improper bolstering.

Additionally, the contents of the 911 tape are not entirely duplicative of Jones'[s] testimony about the murder. Jones never testified about what he told the 911 operator, but rather only that he did, in fact, call 911 right after the shooting. Jones never testified about the details of the conversation he had with the 911 operator.

Further, we do not find the contents of the 911 tape to be inadmissible hearsay. Rather, we agree with the trial court's finding that Jones'[s] emergency phone call to report a murder he had just witnessed constituted an excited

utterance. Furthermore, the tape was admitted in conjunction with the testimony of Officer John Clobes (Clobes), who testified about the procedure used in recording 911 phone calls. Clobes stated that he personally had received several 911 phone calls on the day of Victim's murder concerning the crime. Therefore, the 911 tape also falls under the business record exception to the hearsay rule.

Finally, there was substantial other evidence implicating [Petitioner]. As such, the admission of the 911 tape did not add anything substantial to the case that had not already been established by other evidence and eyewitness testimony. Rather, it was admitted for the legitimate purpose of rehabilitating an eyewitness whose ability to identify [Petitioner] as the perpetrator had been repeatedly questioned and criticized by defense counsel.

For the foregoing reasons, Point II is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Sept. 19, 2006,

Resp't Ex. G, at 8-10.)

In addressing Petitioner's third point on appeal, the Missouri Court of Appeals stated:

In his third point, [Petitioner] avers that the trial court erred and abused its discretion in permitting the prosecutor to elicit [Petitioner]'s testimony about his release on probation for his prior convictions and[] because that testimony and closing argument injected character evidence into the trial and touched upon issues of punishment when the jury did not have to decide [Petitioner]'s punishment.

Preservation of Error and Standard of Review

On cross-examination, the prosecutor questioned [Petitioner] as follows:

Q. Let's start back with your convictions just so I'm clear.

A. Okay.

Q. 1970, you were found guilty by a jury of robbery one.

A. Right.

- 11 -

Q. *Sentenced to ten years. You did about four and a half.*

A. *Right.*

Q. Go up to 1980. Stealing over, a felony, correct? You pled guilty or you were found guilty of that one?

A. Right.

Q. Found guilty by a jury?

A. Pled guilty.

Q. Pled guilty to that one. You received a five year – you ultimately received a five-year prison sentence.

A. Right.

Q. On that particular charge.

A. Right.

Q. 1981 you were found guilty of robbery in the second degree by a jury?

A. Right.

Q. You get a fifteen-year prison sentence.

A. Right.

Q. Also, in 1981 you were found guilty of another robbery, of a robbery one. That's with a weapon, a gun, correct?

A. Right.

Q. Again, you were found guilty?

A. Right.

Q. And you get twenty-five years?

A. Right.

Q. And the twenty-five on the robbery one, the fifteen on the robbery two and the five on stealing over all run concurrent for a total of twenty-five years?

A. Right.

Q. *And you end up doing about thirteen on that?*

A. *No.*

[DEFENSE COUNSEL]: Objection, exceeds the scope of direct.

[PROSECUTOR]: I'm entitled to go into his sentences.

[COURT]: Your objection is overruled.

Q. *You ended up doing about thirteen of the twenty-five?*

A. *Twelve, six.*

Q. *You got out in '93?*

A. *Yes.*

[Emphasis added.] As evidenced by the colloquy above, defense counsel did not object the first time that the prosecutor asked [Petitioner] about his prior convictions. His later objection to the complained about testimony was untimely, as the objection was not made until after the question was asked and answered. Harris, 827 S.W.2d at 256. Thus, the matter is not properly preserved for appellate review and we review only for plain error. Id.

A defendant is entitled to plain error review if the defendant demonstrates that manifest injustice or a miscarriage of justice will occur unless the error is . . . corrected. Knese, 985 S.W.2d at 770. Plain error r[eview] is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review. Id.

<u>Discussion</u>

[Petitioner]'s prior felony convictions were originally brought out by defense counsel during direct examination, while the prosecutor's questions were asked later during cross-examination. When a defendant decides to testify in his own defense, the prosecutor may question him about his prior convictions to establish his lack of credibility as a witness. [Mo. Rev. Stat.] Section 491.050. Further, Section 491.050 has been interpreted by Missouri courts to authorize the prosecutor to elicit the sentences resulting from prior convictions. <u>State v. Jackson</u>, 676 S.W.2d 304, 305 (Mo. [Ct.] App. . . . 1984).

Additionally, no manifest injustice could have resulted from the prosecutor's questioning because there was overwhelming evidence of [Petitioner]'s guilt. <u>See</u> <u>State v. Rollen</u>[,] 133 S.W.3d 57, 64 (Mo. [Ct.] App. . . . 2003). Three eyewitnesses, two of which knew [Petitioner] well, and another familiar with [Petitioner]'s frequent presence in the neighborhood, identified [Petitioner] as the shooter who ran away from the crime scene. [Petitioner] also fled from police. As such, the trial court did not commit plain error in allowing the prosecutor's questions. Based on the foregoing, Point III is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Sept. 19, 2006, Resp't Ex. G, at 10-12) (one footnote omitted) (sixth through ninth alterations in original).

On October 13, 2006, the state appellate court issued its mandate in the direct appeal. (<u>See</u> docket sheet for <u>State v. Calmese</u>, No. ED87216 (Mo. Ct. App. filed Oct. 28, 2005) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Aug. 27, 2012)). Petitioner did not seek further review of the affirmance of his conviction. (<u>Id.</u>)

On December 18, 2006, Petitioner filed a timely pro se motion seeking post-conviction relief under Missouri Supreme Court Rule 29.15 ("PCR motion") based on twelve grounds that his trial attorney and attorney on direct appeal provided ineffective assistance of counsel,

and requesting an evidentiary hearing.  (Pet'r PCR Mot., PCR Legal File, Resp't Ex. J, at 3-103.)

Petitioner subsequently filed, through appointed counsel, an amended PCR motion, which included a request for an evidentiary hearing and Petitioner's pro se PCR motion, along with a request that the claims in the pro se PCR motion be addressed by the Court.  (Pet'r Am. PCR Mot., PCR Legal File, Resp't Ex. J, at 107-237.)  In the amended PCR motion, Petitioner sought relief for violations of his Fifth, Sixth, and Fourteenth Amendment rights due to the ineffective assistance of his trial attorney and appellate attorney.  (Id.)  Specifically, Petitioner alleged that:

(1)  his trial attorney failed to call Mohammed,[8] a material witness, to testify that Mohammed had helped Petitioner get money from the ATM at the gas station and had seen Petitioner walk away, not drive away, from the station (claim 8(a) in the amended PCR motion);

(2)  his trial attorney failed timely to object to Officer Simon's non-responsive testimony regarding Petitioner's prior contacts with the officers, which implied prior bad acts (claim 8(b) in the amended PCR motion);

(3)  his trial attorney failed to investigate and call alibi witnesses (specifically, Mohammed) (ground 8(a) in the pro se PCR motion; referred to by this Court as ground 8(c) in the amended PCR motion);

_____

[8]  The available record does not reveal this person's full name.

- 15 -

(4)  his trial attorney failed properly to impeach Jones, "when [Jones] made inconsistent statements during his testimony" (ground 8(b) in the pro se PCR motion; referred to by this Court as ground 8(d) in the amended PCR motion);

(5)  his trial attorney failed properly to impeach Ykela, "when [she] gave inconsistent statements during her testimony" (ground 8(c) in the pro se PCR motion; referred to by this Court as ground 8(e) in the amended PCR motion);

(6)  his trial attorney failed properly to impeach Melvin, with his "inconsistent statements" (ground 8(d) in the pro se PCR motion; referred to by this Court as ground 8(f) in the amended PCR motion);

(7)  his trial attorney failed to argue in closing that the three eyewitnesses (Jones, Ykela, and Melvin) told three different stories as to the events that led up to the shooting (ground 8(e) in the pro se PCR motion; referred to by this Court as ground 8(g) in the amended PCR motion);

(8)  his trial attorney failed to investigate and call Police Officers Edward Gonzalez, III, Anna England, Ernest Church, and Tommy Simon to use their testimony to impeach the three eyewitnesses (Jones, Ykela, and Melvin) (ground 8(f) in the pro se PCR motion; referred to by this Court as ground 8(h) in the amended PCR motion);

(9)  his trial attorney failed to produce and present evidence crucial to the defense, specifically, photographs of Victim's house "to show that there w[ere] no[] trees to reflect a glare of any kind on the windshield of [the] car," fingerprints on Victim's vehicle, the videotape from the gas station to show Petitioner was there during the alleged murder, DNA

from the beer can seized at the scene of the crime, and the absence of gun residue on Petitioner's clothing that was seized upon his arrest (ground 8(g) in the pro se PCR motion; referred to by this Court as ground 8(i) in the amended PCR motion);

(10)  his trial attorney failed to investigate and present evidence of Victim's "prior enemies and demeanor" (ground 8(h) in the pro se PCR motion; referred to by this Court as ground 8(j) in the amended PCR motion);

(11)  his attorney on direct appeal failed to brief and argue that the trial court erred by overruling Petitioner's motion to suppress statements, which statements were not voluntary and were not the result of a knowing waiver of his <u>Miranda</u>[9] rights (ground 8(i) in the pro se PCR motion; referred to by this Court as ground 8(k) in the amended PCR motion);

(12)  his attorney on direct appeal failed to brief and argue that the trial court erred by denying Petitioner's motions for judgment of acquittal, which were presented at the close of the State's evidence and at the close of all the evidence (ground 8(j) in the pro se PCR motion; referred to by this Court as ground 8(l) in the amended PCR motion);

(13)  his attorney on direct appeal failed to brief and argue that the trial court erred by overruling Petitioner's objection to the cross-examination of Petitioner regarding the credibility of other State witnesses (ground 8(k) in the pro se PCR motion; referred to by this Court as ground 8(m) in the amended PCR motion); and

---

[9]  This refers to **Miranda v. Arizona**, 384 U.S. 436 (1966).

(14) his attorney on direct appeal failed to brief and argue that the trial court erred by not declaring a mistrial when the prosecuting attorney stated improperly during closing argument that Petitioner "was a criminal and knew what he was doing" (ground 8(l) in the pro se PCR motion; referred to by this Court as ground 8(n) in the amended PCR motion). Petitioner then waived the claims in the amended PCR motion that this Court refers to as grounds 8(a), 8(h) (what was 8(f) in the pro se PCR motion), 8(i) (what was 8(g) in the pro se PCR motion), and 8(j) (what was 8(h) in the pro se PCR motion), leaving ten claims for the motion court to resolve. (<u>See</u> Pet'r Waiver, PCR Legal File, Resp't Ex. K, at 240.)

The motion court[10] entered findings of fact and conclusions of law denying Petitioner's request for an evidentiary hearing and denying Petitioner's amended PCR motion ("PCR Judgment"). (Findings of Fact, Conclusions of Law, J. and Order, filed Dec. 14, 2007, PCR Legal File, Resp't Ex. K, at 241-46.)

Petitioner presented four points in his timely PCR appeal, contending that his rights to due process, to the effective assistance of counsel, and to a fair trial, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated by the post-conviction motion court's denial of certain claims. (Pet'r Notice of Appeal, filed Jan. 23, 2008, PCR Legal File, Resp't Ex. K, at 249.) In point one Petitioner challenged the motion court's denial, without a hearing, of his claim that his trial attorney failed timely to object to Officer Simon's non-responsive testimony regarding Petitioner's prior contacts with the officers, which implied prior bad acts

---

[10] The judge presiding over the post-conviction proceeding also presided over the jury trial and sentencing.

by Petitioner. (Pet'r PCR Br., Resp't Ex. H, at 22, 26.) In his second point, Petitioner challenged the motion court's denial, without a hearing, of his claim that his trial attorney failed to impeach Jones, Ykela, and Melvin with their previous inconsistent statements to police officers and in their depositions. (Id. at 23, 38.) For point three, Petitioner challenged the motion court's denial, without a hearing, of his claim that his appellate attorney failed to raise on direct appeal the trial court's overruling of defense counsel's objections to the State's cross-examination of Petitioner as to the credibility of other State witnesses. (Id. at 24, 45.) For his fourth and final point, Petitioner challenged the motion court's denial, without a hearing, of his claim that his appellate attorney failed to raise on direct appeal the trial court's denial of a mistrial after the prosecutor improperly referred to Petitioner's prior convictions in closing argument and told the jury Petitioner was an experienced criminal. (Id. at 25, 51.)

The Missouri Court of Appeals for the Eastern District affirmed the denial of Petitioner's post-conviction motion in a summary order, supplemented by a memorandum, sent only to the parties, setting forth the reasons for the decision. (Per Curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Dec. 16, 2008, Resp't Ex. L.) Citing to **Strickland v. Washington**, 466 U.S. 668 (1984), and finding that the record supported the motion court's conclusions, the state appellate court denied Petitioner's points on appeal. In relevant part, the state appellate court found:

### 1. Trial Counsel's Failure to Timely Object to Officer Simon's Testimony

In his first point on appeal, [Petitioner] contends that the motion court erred in denying his motion for post-conviction relief because his trial counsel was ineffective for failing to timely object to a portion of Officer Tommy

Simon's testimony. Officer Simon testified that Officer Larry Dampier stated, "We know who it is," and that Officer Dampier "reminded me that we had dealt with this guy before." [Petitioner] asserts that this testimony was improper because it implied that he had committed prior bad acts.

In order for [Petitioner] to prevail on his claim, he must show that his trial counsel's objections would have been upheld if made and that the failure to object resulted in a substantial deprivation of his right to a fair trial. Glass v. State, 227 S.W.3d 463, 473 (Mo. banc 2007). Moreover, "[t]o violate the rule prohibiting evidence of other crimes or misconduct by the accused, the evidence must show that the accused committed, was accused of, was convicted of, or was definitely associated with, the other crimes or misconduct." . . . Bolds, 11 S.W.3d [at] 638 . . . . A vague reference is not considered as clear evidence associating the accused with other crimes. Id.

The motion court found that [Petitioner]'s ineffective assistance of counsel claim should be denied because, inter alia, trial counsel's failure to object did not result in a substantial deprivation of [Petitioner]'s right to a fair trial. The motion court's finding is not clearly erroneous.

[Petitioner] has failed to demonstrate that his trial counsel's objections would have been upheld if they were timely made. Officer Simon's testimony that Officer Dampier stated, "We know who it is," and that Officer Dampier "reminded me that we had dealt with this guy before" does not violate the rule prohibiting evidence of other crimes or misconduct because it is only a vague reference which does not clearly associate [Petitioner] with any prior bad acts. See Bolds, supra. Furthermore, [Petitioner] has failed to demonstrate that his trial counsel's failure to object resulted in a substantial deprivation of his right to a fair trial. Point one is denied.

## 2. Trial Counsel's Failure to Impeach Three of the State's Witnesses

In his second point on appeal, [Petitioner] asserts that the motion court erred in denying his motion for post-conviction relief because his trial counsel was ineffective for failing to impeach Jimmie Jones, Ykela Wicks, and Melvin Wicks with their previous inconsistent statements to police officers and in their depositions.

First, [Petitioner] contends that Jimmie Jones made inconsistent statements regarding Melvin's location around the time of the shooting. [Petitioner] also contends that [Jones] made inconsistent statements about

whether []he told Melvin and Ykela that [Petitioner] shot Victim. Secondly, [Petitioner] contends that Ykela made three different statements about what [Petitioner] said to Victim. Ykela's statement to police was that [Petitioner] told Victim, "If it's the last thing I do, I'm going to kill you." Then, Ykela testified in her deposition that [Petitioner] told Victim[,] "I'm going to kill you if that's the last thing I do." At trial, Ykela testified that [Petitioner] told Victim, "Well, whatever the f--k I do, I'm going to kill you." [Petitioner] contends that Ykela made inconsistent statements about whether she gave Victim polish sausages before he was shot. Finally, [Petitioner] contends that Melvin made inconsistent statements about who was loading the car during the shooting and what [Petitioner] said when he picked up his daughter to leave.

The motion court found that the points of inconsistencies raised by [Petitioner] were about trivial matters, and matters which people would not remember several years after they had occurred. The motion court also found that the State's witnesses were consistent about the "crucial evidence" that [Petitioner] walked up to Victim and shot him while he was seated in a car in front of Ykela's house. We agree with the motion court's findings. [Petitioner] has failed to demonstrate that had trial counsel impeached [Jones], Ykela, and Melvin, their impeachment would have provided [Petitioner] with a viable defense or changed the outcome of the trial. Therefore, trial counsel's failure to impeach the witnesses does not constitute ineffective assistance of counsel. See Roberts v. State, 232 S.W.3d 581, 585 (Mo. [Ct.] App. . . . 2007) (stating that "[t]he failure to impeach a witness will not constitute ineffective assistance of counsel unless such action would have provided a viable defense or changed the outcome of the trial"). Point two is denied.

## 3. Appellate Counsel's Failure to Argue that the Trial Court Erred in Overruling Objections to the State's Cross-Examination of [Petitioner]

In his third point on appeal, [Petitioner] argues that the motion court erred in denying his motion for post-conviction relief because appellate counsel failed to argue that the trial court erred in overruling objections to the State's cross-examination of [Petitioner]. [Petitioner] asserts that the prosecutor asked him to comment on the credibility of the State's witnesses when, during [Petitioner]'s cross-examination, the prosecutor made the following comments to [Petitioner]: (1) "You heard the testimony,"; (2) "You heard her testify,"; and (3) "So Officer Simon is flat out wrong? . . . . He is flat out wrong when he says you tossed the keys." The prosecutor withdrew the first comment, and the trial court overruled trial counsel's objection to the other two comments.

[Petitioner]'s trial counsel included the issue in his motion for new trial, but appellate counsel did not raise the issued during [Petitioner]'s direct appeal.

An attorney may, through cross-examination, compare the testimony of the State's witnesses against that of the defendant. State v. Savory, 893 S.W.2d 408, 410 (Mo. [Ct.] App. . . . 1995). In no other way could a contradiction be established. Id. However, when seeking to expose a contradiction between several witnesses' testimony, an attorney may not directly ask one witness if another witness was lying. Id. In order to show prejudice on direct appeal, the defendant must show that the erroneous questioning affected the jury's decision. Id. A defendant fails to show prejudice from such improper questions when there is a drastic difference between the testimony of the state's witnesses and the defense witnesses as to the events of the day because "the jury . . . ha[s] to determine the credibility of the witnesses in order to render their verdict." Id.

The motion court denied [Petitioner]'s ineffective assistance of appellate counsel claim on the grounds that [Petitioner] did not show the error would have required reversal had appellate counsel raised it on direct appeal. We agree with the motion court's finding. Even assuming arguendo that the prosecutor's comments were improper because they can be construed as asking [Petitioner] if the other witnesses were lying, [Petitioner] cannot show prejudice from the comments. There was a drastic difference between the testimony of the State's witnesses and the defense witnesses as to the events of the day. Three of the State's witnesses identified [Petitioner] as the person who shot Victim and fled from police. Additionally, Officer Simon testified that after chasing [Petitioner], he pointed his gun at [Petitioner] and [Petitioner] raised his hands. In contrast, [Petitioner] denied shooting Victim. [Petitioner] testified that he was fleeing from drug dealers, but once he realized it was the police who was chasing him, he stopped and the officers grabbed him and slammed him onto the ground. In order to convict [Petitioner] of first degree murder, the jury had to determine the credibility of the witnesses in order to render their verdict. Because [Petitioner] could not have shown he was prejudiced by the State's allegedly improper cross-examination, there is not a reasonable probability that the result of [Petitioner]'s direct appeal would have been different had appellate counsel raised this issue. Point three is denied.

## 4. Appellate Counsel's Failure to Argue that the Trial Court Erred in Failing to Declare a Mistrial Sua Sponte

In his fourth point on appeal, [Petitioner] argues that the motion court erred in denying his motion for post-conviction relief because appellate counsel

failed to argue that the trial court erred in failing to declare a mistrial during a portion of the prosecutor's closing argument <u>sua</u> <u>sponte</u>.

The motion court denied [Petitioner]'s ineffective assistance of appellate counsel claim on the grounds that [Petitioner] did not show the error would have required reversal had appellate counsel raised it on direct appeal. We agree with the motion court's conclusion. [Petitioner] cites no precedent requiring a trial court to declare a mistrial <u>sua</u> <u>sponte</u> under similar facts. Additionally, counsel will not be found ineffective for failing to raise an unpreserved error on appeal. <u>Blackmon v. State</u>, 168 S.W.3d 129, 134 (Mo. [Ct.] App. . . . 2005). Point four is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b) , dated Dec. 16, 2008, Resp't Ex. L, at 3-7 (fourth, thirty-second, and forty-third alterations in original.) The state appellate court issued its mandate on January 7, 2009. (<u>See</u> docket sheet for <u>Clamese v. Missouri</u>, No. ED90870 (Mo. Ct. App. filed Jan. 23, 2008) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Aug. 27, 2012)). Petitioner did not seek further review of that decision. <u>See</u> <u>id.</u>

Petitioner then filed his timely federal habeas petition [Doc. 1]. In his petition, Petitioner alleges:

(a) for ground one, that his rights to due process, to be free from unreasonable searches and seizures, and to be free from self-incrimination, as guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments, were violated by the trial court's denial of Petitioner's motion to suppress statements and the trial court's admission, over objection, of testimony and evidence regarding Petitioner's statements, "even when it was shown that police officers failed to advise [Petitioner] of his constitutional rights to remain silent and to have an attorney present prior to any questioning" (Pet'r Pet. at 17 [Doc. 1 at 15]);

(b) for ground two, that his rights to due process and a fair trial, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated by the trial court overruling Petitioner's motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence because, absent his statements which should have been suppressed, there was insufficient evidence to support the guilty verdict (Pet'r Pet. at 24 [Doc. 1 at 22]);

(c) for ground three, that his rights to due process, a fair trial, and the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated by his trial attorney's failure to investigate, interview, and call "the only known alibi witness," Mohammed (Pet'r Pet. at 28 [Doc. 1 at 26]);

(d) for ground four, that his rights to due process, a fair trial, and the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated by his trial attorney's failure to identify, investigate, and call a firearms examiner as an expert witness to refute the testimony of the State's expert (Pet'r Pet. at 34 [Doc. 1 at 32]);

(e) for ground five, that his rights to due process, a fair trial, and the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated by his trial attorney's failure to identify, investigate, and call a forensic examiner as an expert witness to refute the testimony of the State's expert (Pet'r Pet. at 41 [Doc. 1 at 39]);

(f) for ground six, that his rights to due process, a fair trial, and the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated by his trial attorney's failure to identify, investigate, and call a DNA examiner as an expert witness to refute the testimony of the State's expert (Pet'r Pet. at 46 [Doc. 1 at 44]);

(g)  for ground seven, that his rights to due process, a fair trial, and the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated by his trial attorney's failure to investigate and interview Jones, Melvin, and Ykela, regarding their criminal backgrounds (Pet'r Pet. at 51 [Doc. 1 at 49]);

(h)  for ground eight, that his rights to due process, a fair trial, and the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated by his trial attorney's failure to investigate and interview the police officials listed in the police reports, which "would have established the lack of evidence the State had against" Petitioner (Pet'r Pet. at 56 [Doc. 1 at 54]);

(i) for ground nine, that his rights to due process, a fair trial, to be tried only on charged offenses, and to the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated by the trial court when it overruled Petitioner's objection to testimony by Officer Simon that Office Dampier stated, "We know who it is" and "reminded me that we had dealt with this guy before," which indicated that Petitioner had committed prior bad acts; and by Petitioner's trial attorney who failed timely to object to this testimony of Officer Simon (Pet'r Pet. at 64 [Doc. 1 at 62]);

(j)  for ground ten, that his rights to due process, a fair trial, and the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated by Petitioner's trial attorney's failure to develop and discuss trial strategy with Petitioner before and during trial (Pet'r Pet. at 74 [Doc. 1 at 72]);

(k)  for ground eleven, that his rights to due process and a fair trial, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated when the trial court allowed, over Petitioner's objection, the Prosecutor to play the 911 tape for the jury, in that the tape was hearsay, improperly bolstered Jones's testimony, and was cumulative (Pet'r Pet. at 84 [Doc. 1 at 82]); and

(l)  for ground twelve, that his rights to due process and the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated when Petitioner's attorney on direct appeal failed to identify, investigate, and include "other colorable claims  that were brought to his attention by Petitioner prior to submission of the appellate brief" (Pet'r Pet. at 89 [Doc. 1 at 89]).

Respondents contend that all of these grounds for relief, except grounds nine and eleven, are procedurally barred, and all of the grounds for relief lack merit.

### Discussion

Procedural bar.  Respondents argue that Petitioner did not present grounds one and two in his direct appeal; that Petitioner did not pursue ground three in his post-conviction appeal; and that Petitioner did not include grounds four through eight, ten, and twelve in his post-conviction motion.

It is well established that "[t]o be eligible for federal habeas corpus relief, a state prisoner must first exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court." **Carney v. Fabian**, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal quotation marks omitted) (quoting Middleton v. Roper, 455 F.3d 838, 855 (8th

Cir. 2006)); <u>see also</u> **Baldwin v. Reese**, 541 U.S. 27, 29 (2004).  Absent a showing of cause and prejudice, a federal habeas court may not reach the merits of "procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Sawyer v. Whitley**, 505 U.S. 333, 338 (1992).

Missouri requires the raising of constitutional claims at the first available opportunity. <u>See</u> **In re J.M.N.**, 134 S.W.3d 58, 73 (Mo. Ct. App. 2004); **In re T. E.**, 35 S.W.3d 497, 504 (Mo. Ct. App. 2001).  Alleged trial court errors, including constitutional claims of trial court error, must be raised on direct appeal; for "[p]ost-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review." **State v. Clark**, 859 S.W.2d 782, 789 (Mo. Ct. App. 1993); <u>accord</u> **State v. Twenter**, 818 S.W.2d 628, 636 (Mo. 1991) (en banc) (a post-conviction proceeding "is not a substitute for direct appeal, and matters that properly should have been raised by direct appeal may not be litigated in a post-conviction proceeding").  "If the allegations of trial error are constitutional violations, they are not cognizable [in a post-conviction proceeding] unless exceptional circumstances are shown which justify not raising the constitutional grounds on direct appeal." **Clark**, 859 S.W.2d at 789; <u>accord</u> **Amrine v. State**, 785 S.W.2d 531, 536 (Mo. 1990) (en banc); **Allen v. State**, 903 S.W.2d 246, 247 (Mo. Ct. App. 1995).  Therefore, if a trial court's alleged violation of the constitution is not raised on direct appeal, the claim is defaulted absent exceptional circumstances justifying the failure to raise the errors on direct appeal.

A post-conviction motion proceeding is, however, the exclusive procedure for pursuing in state court any ineffective assistance of counsel claim; a motion court's decision on such

motions are subject to appeal; and successive post-conviction motions are not permitted. Mo. S. Ct. Rule 29.15(a), 29.15(k); 29.15(l); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006). Claims that should have been but were not presented in a post-conviction motion or on appeal from a denial of a post-conviction motion are procedurally defaulted. See **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (finding that claims not presented in a Rule 29.15 post-conviction motion or appeal are procedurally defaulted); **Osborne v. Purkett**, 411 F.3d 911, 919 (8th Cir. 2005) (finding a claim raised in a Rule 29.15 post-conviction motion but not presented on appeal was procedurally barred); **Sweet v. Delo**, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (finding certain claims defaulted either because they were not raised at any stage of the post-conviction proceeding or because they were not raised in the post-conviction appeal).

A review of the record shows that Petitioner did not pursue grounds one and two, which are alleged trial court errors, on direct appeal. In his argument supporting these two claims, Petitioner has not pointed to any reason for his failure to pursue these two claims on direct appeal. Therefore, there is no justification for Petitioner's failure to present those two claims in his direct appeal, and those claims are procedurally defaulted.

Additionally, Petitioner did not present on appeal from the post-conviction motion court's judgment the ineffective assistance of trial counsel claim regarding the failure to present Mohammed as a witness at trial, which is ground three in this federal habeas proceeding; did not present to the post-conviction motion court, or in the post-conviction

appeal, any of the ineffective assistance of trial counsel claims in grounds four through eight[11] and ten in his federal habeas petition; and did not include either in his post-conviction motion or in his post-conviction appeal the ineffective assistance of appellate counsel claim that is ground twelve in his federal habeas petition. These claims are, therefore, also procedurally defaulted.

"Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Skillicorn v. Luebbers**, 475 F.3d 965, 976-77 (8th Cir. 2007); see also **Sawyer**, 505 U.S. at 338. "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Greer v. Minnesota**, 493 F.3d 952, 957 (8th Cir. 2007) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). What has been established is that a "fail[ure] to recognize the factual or legal basis for a claim,

---

[11] Petitioner asserted, in the claim this Court refers to as claim 8(h) in the amended PCR motion (claim 8(f) in the pro se PCR motion), that his trial attorney provided ineffective assistance by failing to investigate several police officers, including Officers Edward Gonzalez, III, Anna England, and Tommy Simon. To the extent that claim is now presented as ground 8 in this federal habeas proceeding, the Court finds the claim procedurally defaulted because Petitioner waived the claim before the post-conviction motion court considered it and did not pursue it in his post-conviction appeal. (See Pet'r Waiver, filed Nov. 8, 2007, PCR Legal File, Resp't Ex. K, at 240; Pet'r Br. , Resp't Ex. H.) Therefore, the Court concludes that claim was not properly pursued before the post-conviction motion court and is procedurally defaulted.

or [a] fail[ure] to raise [a] claim despite recognizing it, does not constitute cause for a procedural default." **Murray**, 477 U.S. at 486.

Petitioner has not argued any cause for his failure properly to present these claims in state court. Because no cause has been established for Petitioner's procedural default, it is unnecessary to consider whether he has demonstrated prejudice. **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

Petitioner's defaulted grounds may be reached absent a showing of cause and prejudice for his procedural default if he establishes that a failure to consider the claims' merits will result in a fundamental miscarriage of justice. "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice." **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). A showing of actual innocence requires new evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne**, 411 F.3d at 920 (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)); <u>accord</u> **House v. Bell**, 547 U.S. 518, 536-39 (2006) (<u>Schlup</u> standard applies to determine whether defaulted claims in a first federal habeas petition should be considered based on actual innocence). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting <u>Schlup</u>, 513 U.S. at 316).

Petitioner does not submit any new evidence of his actual innocence, nor does he allege that such evidence exists. Therefore, the above claims are procedurally barred; and this Court will not consider those claims on their merits. The Court will consider the merits of the two claims that are not procedurally barred, the claims presented in grounds nine and eleven of Petitioner's federal habeas petition.

Merits - Standard of Review. Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts *only*

> when the state court's decision [is] contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court [of the United States], or the [state court] decision [is ]based on an unreasonable determination of the facts in light of the evidence presented in the state court.

**de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009); accord **Christenson v. Ault**, 598 F.3d 990, 994 (8th Cir. 2010).

> A state court decision is contrary to clearly established federal law if it reaches a conclusion opposite to one reached by the [United States] Supreme Court on a question of law or decides the case differently than the [United States] Supreme Court has decided a case with a materially indistinguishable set of facts.

**de la Garza**, 574 F.3d at 1001; accord **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010) (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)). "A state court decision involves an unreasonable application of clearly established federal law if, in the federal court's independent judgment, the relevant state court decision not only applied clearly established federal law incorrectly, but also did so unreasonably." **de la Garza**, 574 F.3d at 1001. "The unreasonable application inquiry is an objective one." **Id.**; see **Losh**, 592 F.3d at 823 (under

the unreasonable application clause of § 2254, a habeas petition may be granted "only if the state court applied the correct governing legal principle in an objectively unreasonable manner" (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 409 (2000)).

In reviewing state court proceedings to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." **<u>Cullen v. Pinholster</u>**, 131 S. Ct. 1388, 1398 (2011). Additionally, this Court's review is limited to consideration of the United States Supreme Court precedents at the time the state court issues its decision on the merits. **<u>Greene v. Fisher</u>**, 132 S. Ct. 38, 44 (2011) (relying on <u>Cullen</u>, <u>supra</u>); <u>accord</u> **<u>Losh</u>**, 592 F.3d at 823 ("[o]nly rulings in [United States] Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling [United States] Supreme Court holding on the point" (citations omitted)). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **<u>Revels v. Sanders</u>**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam)).

"[T]he 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254's] standard." **<u>Brown v. Luebbers</u>**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the

claim on the merits in the absence of any indication or state-law procedural principles to the contrary." **Harrington v. Richter**, 131 S. Ct. 770, 784-85 (2011). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" **Id.** at 785. When, however, a state court issues a summary ruling, the petitioner can only satisfy the "unreasonable application" prong of habeas review by showing there is no reasonable basis for the state court decision, which the habeas court assesses by determining what arguments or theories could have supported the state court decision and "'whether fairminded jurists could disagree that those arguments or theories are inconsistent'" with a prior decision of the United States Supreme Court. **Cullen**, 131 S. Ct. at 1402 (quoting <u>Harrington</u>, 131 S. Ct. at 784, 786).

Additionally, in a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels. **Smulls**, 535 F.3d at 864-65.

<u>Ground Nine - Admission of Prior Bad Acts and Ineffective Assistance of Trial Counsel for Failing Timely to Object to Testimony of Prior Bad Acts.</u> In ground nine,

Petitioner argues that his rights to due process, a fair trial, to be tried only on charged offenses, and to the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated by the trial court when it overruled Petitioner's objection to testimony by Officer Simon that Office Dampier stated, "We know who it is" and "reminded me that we had dealt with this guy before," which indicated that Petitioner had committed prior bad acts; and by Petitioner's trial attorney who failed timely to object to this testimony of Officer Simon. (Pet'r Pet. at 64 [Doc. 1 at 62].) Respondent counters that the state courts reasonably denied Petitioner relief on these claims.

Ground Nine: Trial Court Error in the Admission of the Challenged Testimony. As part of ground nine Petitioner urges the trial court erred by overruling his objection to Officer Simon's challenged testimony.

The trial court denied Petitioner's counsel's request for a mistrial upon concluding the testimony was not prejudicial and observing that "[t]here was some testimony that has already come out . . . about the police kn[owing Petitioner] because of some little domestic stuff at the house." (Trial Tr., Resp't Ex. E, at 422.) On direct appeal, the Missouri Court of Appeals reviewed this point, Petitioner's first point, only for plain error, which requires an appellant to demonstrate that manifest injustice or a miscarriage of justice will occur if the error is not corrected. (Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Sept. 19, 2006, Resp't Ex. G, at 5-8, 7.) The state appellate court concluded the challenged testimony was "just" a "vague reference or remark" that did not "identify [Petitioner] as the perpetrator of another crime or clearly associate him with other misconduct or criminal

activity," and that prejudice resulting from the comment, if any, "was minimal" and did not rise to the level required for a reversal based on plain error.  **Id.** at 7-8.

A state court's admission of evidence of a defendant's uncharged bad acts does not necessarily constitute a due process violation.  **Harris v. Bowersox**, 184 F.3d 744, 752 (8th Cir. 1999).  A federal habeas court may reverse a state court evidentiary ruling as violating the petitioner's right to a fair trial only if the petitioner shows the alleged evidentiary error fatally infected the proceedings and rendered the petitioner's trial fundamentally unfair. **Estelle v. McGuire**, 502 U.S. 62, 67-68 (1991); **Lisenba v. California**, 314 U.S. 219, 236 (1941); <u>accord</u> **Meadows v. Delo**, 99 F.3d 280, 283 (8th Cir. 1996) (addressing a petitioner's claim that evidence of other crimes was erroneously admitted).  To satisfy his burden, the petitioner must show there is a reasonable probability that the alleged error affected the trial's outcome, i.e., that the verdict would have been different absent the allegedly erroneously admitted evidence.  **Harris**, 184 F.3d at 752; **Meadows**, 99 F.3d at 283; <u>accord</u> **Troupe v. Groose**, 72 F.3d 75, 76 (8th Cir. 1995).

Assuming <u>arguendo</u> that Officer Simon's challenged testimony constitutes evidence of Petitioner's prior bad acts, Petitioner has not established that the verdict would have been different absent that testimony.  Three eyewitnesses to the shooting and to Petitioner running from the scene testified at trial; each of those witnesses was familiar with Petitioner.  Their testimony supports the verdict.  There is no reasonable probability that the admission of Officer Simon's challenged testimony affected the outcome of Petitioner's trial.  <u>See</u> **Parker v. Bowersox**, 94 F.3d 458, 460 (8th Cir. 1996) (admission of testimony that the petitioner had

blackened the murder victim's eyes on one or two prior occasions did not violate the petitioner's right to due process in that it did not fatally infect the trial because there was "abundant testimony" that the petitioner was threatening and hitting the victim shortly before her death); **Troupe**, 72 F.3d at 76 (admission of earlier deviate sexual intercourse conviction did not violate the petitioner's right to due process in trial of rape, sodomy and kidnapping charges involving a minor boy in that it did not fatally infect the trial rendering it fundamentally unfair due to the other evidence at trial).

The state appellate court's decision to uphold the admission of Officer Simon's challenged testimony was not contrary to or an unreasonable application of clearly established federal law. Additionally, there is no showing that the state courts unreasonably determined the facts in light of the evidence presented. Ground nine, to the extent it seeks relief for alleged trial court error in the admission of Officer Simon's challenged testimony, is denied.

Ground Nine: Ineffective Assistance of Trial Counsel in Failing Timely to Object to the Officer Simon's Testimony. Petitioner also seeks habeas relief in ground nine of his petition for his trial attorney's alleged ineffectiveness in failing timely to object to Officer Simon's challenged testimony. The record reveals that Petitioner's trial attorney did not object until two questions and answers after the challenged testimony was provided, when he unsuccessfully sought a mistrial. (Trial Tr., Resp't Ex. E, at 420-22.)

Petitioner pursued this ineffective assistance of trial counsel claim in his amended motion for post-conviction relief (see Claim 8(b) in Pet'r Am. PCR Mot., PCR Legal File, Resp't Ex. J, at 109) and in his post-conviction appeal (see Point I in Pet'r Br., Resp't Ex. H,

at 22, 26). In affirming the motion court's denial of relief, the Missouri Court of Appeals concluded Petitioner "failed to demonstrate that his trial counsel's objections would have been upheld if they were timely made"; the challenged testimony did "not violate the rule prohibiting evidence of other crimes or misconduct because it is only a vague reference which does not clearly associate [Petitioner] with any prior bad acts"; and Petitioner failed to show "that his trial counsel's failure to object resulted in a substantial deprivation of his right to a fair trial." (Mem. Supplementing Order Affirming J. Under Rule 84.16(b), dated Dec. 16, 2008, Resp't Ex. L, at 4.)

The Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 499, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)). In **Strickland**, supra, the Supreme Court established a two-part test for determining whether or not an attorney provided effective assistance of counsel. The petitioner must establish both deficient performance, i.e., that "counsel's representation fell below an objective standard of reasonableness," and prejudice, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland**, 466 U.S. at 687-88, 694; accord **Marcrum**, 509 F.3d at 502; **Kellogg v. Skon**, 176 F.3d 447, 452 (8th Cir. 1999).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687). More specifically, a petitioner must

demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687-89). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting Nolan v. Armontrout, 973 F.2d 615, 618 (8th Cir. 1992)). The Court is highly deferential in analyzing counsel's conduct and "indulg[es] a strong presumption that counsel's conduct falls within the wide range of professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting Middleton, 455 F.3d at 846).

To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir.) (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1105 (8th Cir. 1996)), cert. denied, 130 S. Ct. 3369 (2010). "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Id.** at 596 (quoting McCauley-Bey, 97 F.3d at 1105); accord **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694). The petitioner bears the burden of showing such a reasonable probability. **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be

reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697; **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005).

Here, due to the testimony of three eyewitnesses who saw Petitioner shooting Victim and running from the scene, there is no reasonable probability that the result of the trial would have been different if Petitioner's trial attorney had timely objected to Officer's Simon's challenged testimony. Because Petitioner cannot satisfy the prejudice prong, the Court will not address whether Petitioner demonstrated the performance prong of this ineffective assistance of counsel claim.

The state appellate court's decision is not contrary to, or an unreasonable application of, clearly established Federal law; and is not based on an unreasonable determination of the facts.

Ground nine, to the extent it seeks relief based on Petitioner's trial attorney's alleged failure to provide effective assistance because that attorney failed timely to object to Officer Simon's challenged testimony, is denied.

Ground Eleven: Trial Court Error in Allowing the Jury to Hear the 911 Tape. In ground eleven, Petitioner urges that his rights to due process and a fair trial, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, were violated when the trial court allowed, over Petitioner's objection, the Prosecutor to play the 911 tape for the jury, in that the tape was hearsay, improperly bolstered Jones's testimony, and was cumulative. (Pet'r Pet. at 84 [Doc. 1 at 82].) Petitioner presented this challenge to the Missouri Court of Appeals as the second point in Petitioner's direct appeal. (Pet'r Br., Resp't Ex. A, at 16, 27.) The state appellate

court concluded that the introduction of the 911 tape was not improper bolstering, but an effort to rehabilitate Jones after Petitioner's counsel had "extensively cross-examined," "repeatedly questioned" and "criticized" Jones, specifically, about his ability to observe the incident, see Petitioner's face, and correctly identify Petitioner; his familiarity with Petitioner; and his ability accurately to describe Petitioner's clothing and physical appearance.  (Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. G, at 9.)  The state appellate court also found the 911 tape was not "entirely duplicative" because Jones testified that he called 911 but did not testify about what he told the 911 operator; the 911 tape was not inadmissible hearsay because it constituted "an excited utterance" or a "business record"; and the 911 tape "did not add anything substantial to the case that had not already been established by other evidence and eyewitness testimony."  (Id.)

    As noted earlier, a federal habeas court may reverse a state court evidentiary ruling as violating the petitioner's right to a fair trial only if the petitioner shows the alleged evidentiary error fatally infected the proceedings and rendered the petitioner's trial fundamentally unfair.  **Estelle**, 502 U.S. at 67-68; **Lisenba**, 314 U.S. at 236; accord **Meadows**, 99 F.3d at 283.  The Court concludes the state appellate court reasonably determined that the 911 tape did not add anything substantial to the case that was not otherwise provided through other evidence and testimony.  In particular, there was testimony from three individuals familiar with Petitioner about the shooting and Petitioner running away from the scene.  Their testimony supports the verdict.  There is no reasonable probability that the admission of the 911 tape affected the outcome of Petitioner's trial.

The state appellate court's decision to uphold the admission of the 911 tape was not contrary to or an unreasonable application of clearly established federal law. Additionally, there is no showing that the state courts unreasonably determined the facts in light of the evidence presented. Ground eleven is denied.

## Conclusion

Upon careful consideration of Petitioner's twelve claims; finding that ten of those claims are procedurally defaulted and may not be considered on their merits; and finding that the remaining two claims, grounds nine and eleven in Petitioner's federal habeas petition, lack merit, the Court will deny Petitioner's federal habeas petition. Accordingly,

**IT IS HEREBY ORDERED** that Terry Russell is **SUBSTITUTED** for Steve Larkins as a Respondent in this case.

**IT IS FURTHER ORDERED** that Chris Koster is **ADDED** as a Respondent in this case.

**IT IS FINALLY ORDERED** that the 28 U.S.C. § 2254 petition of Jamie Calmese is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.

 /s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of August, 2012.